862 F.2d 1529
 Margaret TAYLOR, Widow of Hillard Taylor, Respondent,
v.
ALABAMA BY-PRODUCTS CORPORATION, Petitioner,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 88-7290.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 12, 1989.
 
 H. Thomas Wells, Jr., W. Percy Badham, III, Maynard, Cooper, Frierson & Gale, P.C., Birmingham, Ala., for petitioner.
 Michelle Gerdano, Barbara Johnson, George R. Salem, Donald S. Shire, Lawrence Rogers, Director, Office of Workers' Compensation Programs, Dept. of Labor, Cheryl Blair-Kijewski, Steven D. Breeskin, Acting Deputy Com'r, Washington, D.C., Charles T. Clark, Birmingham, Ala., for Party-in-Interest.
 Peggy H. Cook, Birmingham, Ala., for Taylor.
 Petition for Review of an Order of the Department of Labor Benefits Review Board.
 Before HILL and ANDERSON, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This case arose from the filing of a claim by Hillard Taylor, pursuant to the Black Lung Benefits Reform Act (the Act). Under the Act, a coal miner is presumed to be totally disabled due to pneumoconiosis arising out of his employment if he has been engaged in coal mining for 10 years and can meet one of five medical requirements: a chest x-ray establishing pneumoconiosis; ventricular studies establishing chronic respiratory or pulmonary disease; blood gas studies demonstrating an impairment in the transfer of oxygen from the lung to the blood; the documented opinion of a physician; or, in the case of a deceased miner, the affidavit of a survivor with knowledge of the miner's condition. For the purposes of the Act, pneumoconiosis is defined as a chronic dust disease of the lung arising out of coal mine employment. The employer may rebut the presumption of disability by showing that the disability did not arise in whole or in part out of the coal mine employment, or by establishing that the miner did not have pneumoconiosis. 20 C.F.R. Secs. 727.202, 203(a), 203(b)(3)-(4).
 
 FACTS
 
 2
 Hillard Taylor worked as a miner within the meaning of section 402(d) of the Act for a period of 24 years prior to his retirement at age 62 in 1980. During this time, he was employed by Alabama By-Products Corporation (ABC) as a rock duster from 1970 to 1978 and as an oiler from 1978 to 1980.
 
 
 3
 When Hillard Taylor filed his claim for benefits under the Act on November 23, 1979, a Department of Labor deputy commissioner initially found Taylor eligible for benefits and named ABC as the responsible operator liable for payment of benefits. ABC controverted the claim, but following an informal conference, the deputy commissioner affirmed his earlier finding of entitlement. ABC then requested a formal hearing before an administrative law judge (ALJ).
 
 
 4
 Hillard Taylor died on January 26, 1984. The death certificate lists the causes of death as cardiopulmonary arrest due to severe congestive heart failure due to severe renal and hepatic failure. Taylor's widow, Margaret Taylor, was found to be an eligible survivor. She filed her claim for survivor's benefits on March 3, 1984. The Department of Labor issued an initial finding of eligibility and notified ABC. On May 18, 1984, ABC filed a second notice of controversion of liability, and the case was referred to the office of ALJs so that the claims could be consolidated for hearing.
 
 
 5
 A hearing was held before an ALJ on July 23, 1985. The medical evidence introduced at the hearing included numerous x-ray reports, five pulmonary function studies, three arterial blood gas tests, and the reports and/or testimony of five physicians. The ALJ found that the presumption of disability due to pneumoconiosis was invoked pursuant to Sec. 727.203(a)(2), because three pulmonary function studies produced qualifying values. However, the ALJ found that the presumption of disability was rebutted under Secs. 727.203(b)(3) and (4).
 
 
 6
 With respect to subsection (b)(3), the ALJ found the opinions and conclusions of four of the physicians to be unsupported by qualified evidence, and thus relied only upon the testimony of Dr. Gaines Jones in finding that rebuttal was established.[1] In a report dated February 24, 1981, Dr. Jones stated: "I believe Mr. Taylor's pulmonary disability is the result of cigarette abuse rather than coal dust exposure, however, it cannot be stated with certainty that his occupational exposure did not contribute minimally to his pulmonary disability." (Director's Exhibit 30). In deposition testimony, Dr. Jones gave substantially the same opinion:
 
 
 7
 Q.... do you have an opinion as to whether or not Mr. Taylor had coal worker's pneumoconiosis?
 
 
 8
 A. I did not feel that Mr. Taylor had coal worker's pneumoconiosis.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 A. I felt the pulmonary impairment was due primarily to Mr. Taylor's abuse of cigarettes.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 Q.... do you have an opinion as to whether the percentage of impairment which you attribute to pneumoconiosis is totally disabling from a pulmonary standpoint only?
 
 
 15
 A. No, sir. No, it is not. It is not disabling if there is any impairment as a result of coal dust exposure; it is certainly not disabling.
 
 
 16
 (Employer's Exhibit 6). The ALJ summarized this evidence as follows: "Dr. Jones testified that any respiratory impairment Claimant had was related to and caused by cigarette smoking, and that any impairment which might be attributable to pneumoconiosis was not disabling.... Therefore, rebuttal has occurred under 727.203(b)(3)." (R1-56).
 
 
 17
 With respect to subsection (b)(4), the ALJ relied on Dr. Jones' opinion, Dr. Grimes' opinion, and the negative x-rays. According to the ALJ, Dr. Grimes found insufficient evidence of pneumoconiosis. With respect to the x-rays, the ALJ found that of the seventeen readings of nine x-rays, thirteen were negative, two were unreadable and only two readings were positive. Based on this evidence, the ALJ determined that rebuttal had occurred under 727.203(b)(4) as well.
 
 
 18
 In summary, the ALJ concluded that the weight of the medical evidence, including the death certificate, demonstrated that Taylor's death was not due to pneumoconiosis and that any respiratory impairment Taylor may have had prior to his death did not arise out of coal mine employment. In addition, the ALJ concluded that the relevant evidence demonstrated that Taylor did not have pneumoconiosis. Therefore, the ALJ denied Taylor's claim.
 
 
 19
 After an appeal by Margaret Taylor, the Benefits Review Board (Board) reversed the ALJ's finding that the interim presumption was rebutted and held that Taylor was entitled to benefits as a matter of law. The Board noted that a party opposing entitlement must establish that no part of a miner's disability arose out of coal mine employment in order to rebut the interim presumption pursuant to subsection (b)(3). Black Diamond Coal Mining Co. v. Benefits Review Board, 758 F.2d 1532 (11th Cir.1985). The Board did not find the report of Dr. Jones to be sufficient to establish rebuttal under subsection (b)(3). Although Dr. Jones opined that Taylor's pulmonary disability was caused by cigarette smoking, he also mentioned that he could not state with certainty that Taylor's occupational exposure did not contribute minimally to his disability. (Director's Exhibit 30). The Board found that this uncertainty on the part of Dr. Jones established that the employer was unable to show that no part of Taylor's disability arose out of coal mine employment.
 
 
 20
 The Board further found that the ALJ erred in finding that rebuttal had been established under subsection (b)(4) on the basis of the medical reports of Drs. Jones and Grimes and the negative x-rays of record. The Board found Dr. Jones' diagnosis of chronic obstructive lung disease, in addition to his inability to state with certainty that Taylor's occupational exposure did not contribute to his condition, was tantamount to a diagnosis of pneumoconiosis. The Board found that contrary to the finding of the ALJ, Dr. Grimes had opined that Taylor's condition did suggest the presence of pneumoconiosis. (See Director's Exhibit 14). Finally, the Board ruled that in light of its findings with respect to the opinions of Drs. Jones and Grimes, negative x-ray evidence, standing alone, is insufficient to establish rebuttal under subsection (b)(4). For these reasons, the Board reversed the findings of the ALJ concerning rebuttal and held that the claimant was entitled to benefits.
 
 DISCUSSION
 
 21
 The issue before this court is whether the Benefits Review Board erred in reversing the ALJ's findings of rebuttal under 20 C.F.R. Secs. 727.203(b)(3) and (b)(4). ABC contends that the Board erred by applying an improper legal standard to the report of Dr. Jones and therefore erred in finding that the presumption had not been rebutted under subsection (b)(3). We agree with ABC that the Board applied an improper legal standard in its consideration of Dr. Jones' testimony.
 
 
 22
 We first point out that the Board's scope of review is very limited. If the ALJ's findings of fact and conclusions of law are supported by substantial evidence, are rational, and are consistent with applicable law, they are binding upon the Board and may not be disturbed. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); 33 U.S.C. Sec. 921(b)(3), as incorporated by 30 U.S.C. Sec. 932(a). We find that the ALJ's finding of (b)(3) rebuttal based on Dr. Jones' report was supported by substantial evidence using the proper legal standard.
 
 
 23
 To review, Dr. Jones opined that Taylor's pulmonary disability was caused by cigarette smoking, yet he could not state with certainty that Taylor's occupational exposure did not contribute minimally to his pulmonary disability (Director's Exhibit 30). The Board incorrectly found that this statement established that the employer could not show that no part of Taylor's disability arose out of coal mine employment. From this incorrect finding, the Board concluded that there was no rebuttal under subsection (b)(3).
 
 
 24
 A physician's medical opinion offered to rebut an interim presumption of pneumoconiosis is not required to be expressed in terms of a "reasonable degree of medical certainty" before that opinion may be considered by an ALJ in rebuttal. Rather, it is sufficient that the doctor's opinion constitutes a "reasoned medical judgment." Drummond Coal Co. v. Freeman, 733 F.2d 1523 (1984). A physician's opinion, expressed in clear and uncontradicted terms and based on a physical examination, a ventilatory study, chest x-rays, and a review of the miner's employment history satisfies the "reasoned medical judgment standard." Id. at 1527.
 
 
 25
 Dr. Jones' examination consisted of a chest x-ray, interpreted by Dr. Payne, a pulmonary function study, an arterial blood gas study and a physical examination. Dr. Jones stated, in his reasoned medical judgment, that Taylor's impairment was due to cigarette abuse rather than coal dust exposure. Although he admitted that he could not state with certainty that Taylor's occupational exposure did not contribute minimally to his pulmonary disability, Dr. Jones' opinion, based on a reasoned medical judgment, was that Taylor's impairment was caused by cigarette abuse. Because the Board applied an incorrect standard, we remand to the Board to consider the rebuttal evidence of Dr. Jones under the "reasoned medical judgment" standard.
 
 
 26
 We point out that this standard should also be used by the Board when evaluating the rebuttal evidence under subsection (b)(4). The Board additionally relied on the report of Dr. Jones for its finding that (b)(4) rebuttal had not been established. The Board found Dr. Jones' report to be tantamount to a diagnosis for pneumoconiosis. Given that an improper standard was used in that determination, we remand with respect to subsection (b)(4) as well.
 
 
 27
 Although we find that the ALJ correctly applied the "reasoned medical judgment" standard, we note that the ALJ may have used an improper standard in evaluating part of Dr. Jones' testimony. In deposition testimony, Dr. Jones was asked:
 
 
 28
 Q.... do you have an opinion as to whether the percentage of impairment which you attribute to pneumoconiosis is totally disabling from a pulmonary standpoint only?
 
 
 29
 A. No, sir. No, it is not. It is not disabling if there is any impairment as a result of coal dust exposure.
 
 
 30
 (Employer's Exhibit 6) (emphasis added). The ALJ appears to have evaluated this testimony improperly, finding that any impairment which might be attributable to pneumoconiosis was not disabling. As we held in Black Diamond, "[e]ven where pneumoconiosis is only a 'contributing cause' of claimant's total disability, benefits must be awarded as long as no other ground for rebuttal has been established." 758 F.2d at 1534. In this case, however, Dr. Jones' opinion was that Taylor's impairment was the result of cigarette abuse rather than coal dust exposure. This opinion constitutes grounds for rebuttal under subsection (b)(3), and such a finding by the ALJ was appropriate. We point this out merely to clarify the appropriate standards for (b)(3) rebuttal.
 
 
 31
 For the reasons stated above, the decision of the Benefits Review Board, reversing the ALJ's findings of rebuttal under subsections (b)(3) and (b)(4), is VACATED, and the case is ordered REMANDED for proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 We do not question the weight accorded to the evidence by the ALJ, for such is not within our scope of review. However, see Markus v. Old Ben Coal Co., 712 F.2d 322 (1983) (ALJ is not bound to accept opinion or theory of any given medical officer, but may weigh the medical evidence and draw his own inferences, and may give less credence to a doctor's conclusion when the reliability of the tests which form the basis of such conclusion is questionable.)